UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SEAN HUNTLEY STARKWEATHER and     Case No. 20-10717-t7
FAITH LYNN STARKWEATHER,

     Debtors.

## **OPINION**

Before the Court is the chapter 7 trustee's motion for a protective order relating to written discovery served by Sandia Laboratory Federal Credit Union, Debtors' largest creditor. The discovery relates to the trustee's motion to approve a settlement he reached with Debtors on a number of issues, including a pending motion to dismiss, an objection to certain claimed exemptions, and the sale of Debtors' house. The Court concludes that the motion is well taken and should be granted.

A.     Facts.

For the sole purpose of ruling on the motion, the Court finds:[1]

Debtors filed this chapter 7 case on March 31, 2020. Philip Montoya was appointed the chapter 7 trustee.

Debtors own a house in Edgewood, New Mexico. In September 2019 Debtors refinanced the house, taking out two loans from the credit union (for $444,000 and $38,000) and paying off the existing mortgage. The credit union intended to secure repayment of the loans with first and

---

[1] The Court took judicial notice of the docket in this case and all related adversary proceedings. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

second mortgages on the house. Unfortunately for the credit union, the title company recorded the mortgages in the wrong county.[2]

On May 1, 2020, the chapter 7 trustee filed a report of no distribution. He later learned of the mistake in recording the credit union's mortgages, so on July 15, 2020, he withdrew the no distribution report.

On July 29, 2020, Debtors moved to dismiss their case, admitting that they had not known about the recording mistake and stating that they no longer wanted bankruptcy relief. The credit union joined in the motion to dismiss, candidly admitting that if the case were dismissed, the first thing the credit union would do would be to record its mortgages in the right county.

Another significant creditor of Debtors, New Mexico Bank & Trust ("NMB&T"), objected to the motion to dismiss. The chapter 7 trustee also objected.

On August 3, 2020, NMB&T filed a nondischargeability and denial of discharge proceeding against Debtors, alleging various misstatements and omissions.

The following creditors have filed proofs of claim in this case:

| | |
|---|---|
| Student loan creditor: | $ 12,050.77 |
| General unsecured creditors: | $ 16,290.17 |
| The credit union mortgage claims: | $477,363.13 |
| The credit union general unsecured claim: | $ 22,259.21 |
| NMB&T's unsecured guaranty claim | $360,987.00 |
| Total: | $888,950.28 |

On September 28, 2020, the trustee filed an application to employ a realtor to appraise Debtors' house and testify in opposition to the motion to dismiss.

---

[2] The credit union has title insurance for its mortgages, so it might be more accurate to say that the recording mistake was unfortunate for the title insurer.

On October 28, 2020, the trustee objected to Debtors' claimed exemptions in two saddles and miscellaneous tack; personal property to the extent the claimed exemption exceeded $1,000; an ATV; and $3,583 in cash and a savings account.

On December 3, 2020, the trustee filed a motion to approve a settlement with Debtors. Under the proposed settlement, Debtors would pay the trustee $395,000 in satisfaction of all claims the trustee has to estate property, Debtors would withdraw the motion to dismiss, and the trustee's objection to exemptions would be resolved. From what the Court can gather, Debtors intend to raise the money needed for the settlement by mortgaging their house.

On December 4, 2020, the trustee filed an adversary proceeding against the credit union to avoid its mortgages.

The credit union objected to the settlement motion on January 5, 2021, arguing:

1. The motion to dismiss should be adjudicated before hearing the settlement motion;
2. The trustee's proceeding to avoid the credit union's mortgages should be adjudicated before a final hearing on the settlement motion;
3. The proposed settlement is not in the best interests of creditors; and
4. Proposed settlement would not be in Debtors' interests if NMB&T's discharge litigation were successful.

On April 7, 2021, the credit union agreed to entry of a judgment in the avoidance proceeding that it was unsecured, mooting one of the credit union's arguments against the settlement.

The Court held a preliminary hearing on the settlement motion on March 23, 2021, and set a final hearing for May 13, 2021. In the scheduling order, entered March 25, 2021, the Court shortened the deadline to respond to written discovery to 21 days.

The credit union served written discovery on the trustee on April 6, 2021, consisting of 20 interrogatories and 14 requests for production. The trustee's response deadline is April 27, 2021. The trustee filed the motion for protective order on April 13, 2021. The Court held a hearing on the motion the next day.

In his motion for protective order, the trustee argues:

- Some of the written discovery improperly seeks information about the trustee's communications with his counsel or work product;

- The requests for information "relating in any way to the Bankruptcy" or "relative to the Bankruptcy" are overbroad and beyond the scope of discovery;

- The request for documents about "the personal property claimed exempt by the Debtors" should be limited to the personal property that is the subject of the settlement;

- Interrogatories about communications between the trustee and NMB&T seek information beyond the scope of discovery;

- The interrogatory about how the trustee found out about the title company's mortgage recording error is beyond the scope of discovery; and

- The request that the trustee opine whether, if Debtors' discharge were denied, they would owe the credit union's debt in full, seeks information that is irrelevant and beyond the scope of discovery.

On April 14, 2021, a stipulated order dismissing the § 727[3] claims was entered in NMB&T's nondischargeability/discharge proceeding. The stipulated order mooted another of the credit union's arguments against the settlement.[4]

B.  Rule 9019(a) Motions.

Federal Rule of Bankruptcy Procedure 9019(a) "allows a court, after notice and a hearing, to approve a compromise or settlement of a claim belonging to the bankruptcy estate, including a debtor's cause of action against a third party." *In re Brutsche*, 500 B.R. 62, 70 (Bankr. D.N.M. 2013). "Compromises are favored in bankruptcy." 10 Collier on Bankruptcy ¶ 9019.01[1] (16th ed. 2021). "The purpose behind compromises 'is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims.'" *Korngold v. Loyd (In re S. Med. Arts Cos. Inc.)*, 343 B.R. 250, 255 (10th Cir. BAP 2006) (quoting *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380–81 (9th Cir. 1986)).

The party seeking approval of a compromise bears the burden of showing "that the proposed settlement is fair, equitable, and in the best interests of the estate." *Brutsche*, 500 B.R. at 70. A court's decision to approve a compromise "must be an informed one based upon an objective evaluation of developed facts." *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989). However, the Court need not engage in a mini-trial addressing the merits of the proposed compromise. *See Ars Brook, LLC v. Jalbert (In re Servisense.com, Inc.)*, 382 F.3d 68, 71–72 (1st Cir. 2004) (the responsibility of the bankruptcy judge is to canvass the issues and see whether the settlement is within the range of reasonableness). Further, "[t]he proposed settlement does not need to represent the best possible outcome. . . . 'the court need only determine that the settlement does not fall

---

[3] All statutory references are to 11 U.S.C.
[4] This leaves only the "bad deal" argument and the argument that the motion to dismiss should be heard first. As set forth below, the latter argument is weak. Fortunately, only one of the discovery requests is directed to this argument.

-5-
Case 20-10717-t7    Doc 114    Filed 04/16/21    Entered 04/16/21 15:30:38 Page 5 of 11

below the lowest point in the range of reasonableness.'" *Brutsche*, 500 B.R. at 70–71 (quoting *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 654 (8th Cir. 2008).

In approving a compromise under Rule 9019(a), a court must consider "the probable success of the underlying litigation on the merits, the possible difficulty in collection of a judgment, the complexity and expense of the litigation, and the interests of creditors in deference to their reasonable views." *Kopp v. All Am. Life Ins. Co., (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997) (citations omitted); *In re Log Furniture, Inc.*, 257 F. App'x 101, 103 (10th Cir. 2007) (citing *In re Kopexa*).

C.  The Scope of Discovery Under Rule 26(b).

Two legal precepts are at play in this discovery dispute: the scope of discovery under Fed. R. Civ. P. ("Rule") 26(b), and the grounds for entering a protective order under Rule 26(c).[5]

Historically, the scope of discovery under Rule 26 has been broad. *See*, *e.g.*, *United States v. Woody*, 336 F.R.D. 293, 342 (D.N.M. 2020) (Rule 26(b)(1) generally "allows discovery of any admissible evidence and discovery of anything reasonably calculated to lead to the discovery of admissible evidence.") (internal quotation omitted). To strike a balance between broad discovery and protections for parties and non-parties, Rule 26 has been amended several times since it was first adopted in 1937. Starting with the 2000 amendments in particular, Rule 26 began placing limits on discovery. *See In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188–90 (10th Cir. 2009) ("The rule contemplates greater judicial involvement in the discovery process and thus acknowledges the reality that it cannot always operate on a self-regulating basis."); 8 Wright & Miller, Federal Practice and Procedure § 2007 (3d. ed. 2021) ("Although proposals to narrow the scope of discovery surfaced starting in the 1970s, that was not actually done until the 2000

---

[5] Both made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7026 and 9014.

amendments to Rule 26(b)(1)."). Rule 26(b) was most recently amended in 2015 and currently provides in part:

> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
> (2) *Limitations on Frequency and Extent….*
>  (C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>   (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>   (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>   (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

"Federal [] courts have broad discretion over discovery." *Environmental Dimensions, Inc. v. Energysolutions Government Group, Inc.*, 2021 WL 1060341, at *2 (D.N.M.) (quoting *Clower v. GEICO Ins.*, 2013 WL 1897832, at *6 (D.N.M.)). Furthermore, they have the responsibility to limit discovery pursuant to Rule 26(b)(2)(C). *See In re Hogan*, 625 B.R. 134, 142 (Bankr. D.S.C. 2020) (court must limit discovery in appropriate cases); *In re Thomas*, 2020 WL 5997140, at *2 (Bankr. W.D. Tenn.) ("At the very least, discovery must be relevant to a party's claim or defense."); *cf. Taylor v. Grisham*, 2020 WL 6449159, at *3 (D.N.M.) ("Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not.") (quoting *Audiotext Commc'ns v. U.S. Telecom, Inc.*, 1995 WL 18759, at *1 (D. Kan.)); *Benevidez v. Sandia National Laboratories*, 319 F.R.D. 696, 713 (D.N.M. 2017) (scope of discovery is broad but the rule is not intended to allow fishing expeditions).

The goal is to ensure that the discovery allowed is "proportional to the needs of the case." Rule 26(b)(1). "Proportionality, like other concepts, requires a common sense and experiential assessment." *Saleh v. Pfister*, 2021 WL 326361, at *3 (N.D. Ill.).

D.   Protective Orders Under Rule 26(c).

The trustee has asked for a protective order under Rule 26(c). Rule 26(c)(1) provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending….The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense….

The trustee alleges that the credit union's interrogatories and requests for production union are unduly burdensome and oppressive—unduly burdensome because they are overly broad, made on a shortened schedule, and address a narrow issue; and oppressive because the material sought, if revealed, could chill discussions with trustees generally.

When applying Rule 26(c), the party seeking discovery has the initial burden of showing that the discovery is relevant, *Main Street America Assurance Co. v. Savalle*, 2021 WL 1399685, at *2 (D. Conn.). If that burden is met, then the party seeking the protective order must show good cause. *Id.* "The court has broad discretion 'to decide when a protective order is appropriate and what degree of protection is required.'" *Orchestrate HR, Inc. et al. v. BCBS of Kansas, Inc.*, 2021 WL 1397127, at *3 (D. Kan.) (quoting *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007)); *Herrera v. Easygates, LLC*, 2012 WL 5289963, at *2 (D. Kan.) (same); *Joseph L. v. Conn. Dept. of Children and Families*, 225 F.R.D. 400, 402 (D. Conn. 2005) (same); *Hare v. Baur*, 2020 WL 6075629, at *2 (D.N.M.) ("A protective order may take many forms, including a flat denial of a discovery request or ordering that the request be limited to certain matters."); 8A

Federal Practice and Procedure § 2036 ("The provision emphasizes the complete control that the court has over the discovery process.").

In addition to a general request for a protective order, the trustee has also asked for protection from disclosing attorney work product or privileged material. The trustee agreed, however, to provide the credit union a privilege log of material withheld on those grounds. *See* Rule 26(b)(5).

E        <u>Some of the Requested Information is not Relevant or Proportional</u>.

The gravamen of the credit union's objection to the settlement motion is that it is a bad deal for creditors. The Court must therefore determine at a final hearing whether the settlement is "within the range of reasonableness." *Brutsche*, 500 B.R. at 70-71. Given the issues resolved by the proposed settlement, the evidence at the final hearing should focus on the value of Debtors' house and personal property, the costs of sale, the strength of Debtor's exemption claims, the strength of Debtors' motion to dismiss, and the delay and expense of litigation. The Court anticipates that the parties may introduce expert testimony about some of these issues. The parties likely will examine and cross-examine the trustee and Debtors and make legal argument. If done properly, the Court will have a good record upon which to determine whether to approve the proposed settlement.

While some of the credit union's written discovery requests seek relevant, proportional information about these issues, others do not. For example, the trustee's discussions with Debtors leading up to the settlement are not relevant or proportional to the matter before the Court. It makes no difference what the parties or their counsel discussed, negotiated, and argued about before they struck their deal. What is relevant is the agreement itself and the trustee's justification for taking it rather than holding our for more money.

Similarly, the trustee's discussions with NMB&T are not within the legitimate scope of discovery. NMB&T, a large unsecured creditor, obviously hopes to maximize the dividend to creditors. It finds itself opposed to the credit union, which wants the case dismissed for reasons of its own. These types of adversarial positions happen all the time in bankruptcy cases. They are not an excuse to start probing everywhere, looking for collusion or other "dirt" that might or might not be relevant at the settlement motion hearing.

Finally, it is not relevant who "tipped off" the trustee that the credit union's mortgages were filed in the wrong county. No good could come of investigating that matter, which has no bearing on the proposed settlement in any event.

The credit union seems to be flailing somewhat with its discovery requests, hoping to uncover something, anything, that might help it fix the mortgage recording error. That is not an appropriate use of discovery.

F. Some of the Requested Information May Be Privileged.

It is not clear to the Court that the credit union's discovery requests seek documents or information that are relevant, proportional, and privileged. To the extent they do, the trustee is entitled to withhold the documents and information and produce a privilege log instead, pursuant to Rule 26(b)(5). [6]

---

[6] Generally, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Nelson v. State Farm Fire and Casualty Co.*, 2020 WL 7248186, at *5 (D.N.M. 2020) (quoting Rule 26(b)(1)). This includes information that may ultimately be inadmissible under Federal Rule of Evidence 408. The trustee's alternative reliance on the New Mexico rule of evidence 11-503(B)(3), concerning the state's common interest doctrine, is not particularly helpful. In all federal question matters, including bankruptcy, courts must apply the privileges that exist under the federal common law. *See In re Wilkerson*, 393 B.R. 734, 740 (Bankr. D. Colo. 2007). Some bankruptcy courts have applied a federal common interest doctrine. *See*, *e.g.*, *In re Simplexity, LLC*, 584 B.R. 495, 498 (Bankr. D. Del. 2018); Restatement (Third) of the Law Governing Lawyers § 76 (2000). Because any such information sought by the credit union is beyond the scope of discovery in this matter, however, the Court need not explore the contours of the federal common interest doctrine.

G.  The Motion to Dismiss Should Not Be Heard Before the Settlement Motion.

Finally, no discovery need be taken on the credit union's weak argument that the motion to dismiss should be ruled on before the settlement motion. One of the matters the parties propose to settle is the motion to dismiss. It makes no sense to force the parties to litigate a matter they have settled, and then litigate why they should be allowed to settle the matter.

The credit union points out that it joined in Debtors' motion to dismiss. Should the Court approve the settlement, the credit union may pursue the motion to dismiss if it wishes.

H.  Awarding Expenses.

The trustee seeks expenses pursuant to Rules 26(c)(3) and 37(a)(5). The Court will take up the matter of expenses at the final hearing on the settlement motion.

## Conclusion

The credit union's argument that the proposed settlement is not a good deal for creditors is colorable and will be tried next month. The parties should focus on that issue and not get sidetracked by other arguments of no relevance to the settlement motion. A separate order consistent with this opinion will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 16, 2021

Copies to: counsel of record