UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SEAN HUNTLEY STARKWEATHER and FAITH LYNN STARKWEATHER,

Case No. 20-10717-t7

Debtors.

**OPINION**

Sandia Laboratory Federal Credit Union refinanced Debtors' house in 2019 and mistakenly recorded its mortgages in the wrong county. Debtors later filed this chapter 7 case. When the trustee discovered the recording error, he sued the credit union to avoid the mortgages. Fearing the loss of their house, Debtors moved to dismiss the case. The trustee then reached a settlement with Debtors under which they would buy the house and withdraw the motion to dismiss. Before the Court is the trustee's motion to approve the settlement. The only objecting party is the credit union, which would benefit from dismissal because it could then properly record its mortgages. Having taken evidence at a final hearing, the Court concludes that the proposed settlement is reasonable and should be approved.

A. Facts.

The Court finds:[1]

Debtors are a married couple living at 12 Brittany Lane in Edgewood, New Mexico. Faith Starkweather is not employed. Sean Starkweather manages a car dealership in Santa Fe.

In December 2017 and January 2018, Debtors formed a corporation and borrowed nearly $1 million from New Mexico Bank & Trust to buy and operate a hardware store in Chama, New

[1] The Court takes judicial notice of its docket in this proceeding and the associated adversary proceedings. See *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

Mexico. Debtors guaranteed payment of the loan. The hardware store was not profitable and closed in September of 2019. The bank sued to collect the loan and the guarantees, prompting Debtors to file this case on March 31, 2020. Philip Montoya was appointed the chapter 7 trustee.

Aside from the bank, Debtors' largest creditor is the credit union, which refinanced Debtors' house in September 2019. Debtors owe the credit union about $480,000. Due to an error by the local title company that closed the refinancing, the credit union's mortgages were recorded in the wrong county.

The trustee initially filed a report of no distribution on May 1, 2020. Later, when he learned of the mistake in recording the credit union's mortgages, he withdrew his initial report, got a bar date set, and filed a proceeding to avoid the mortgages.[2]

Concerned about losing their house to a trustee's sale, Debtors filed a motion to dismiss their case. The credit union joined in the motion, with a view toward recording its mortgages in the correct county after dismissal. The trustee and the bank opposed the motion to dismiss.

The trustee then entered into negotiations with the Debtors to settle the motion to dismiss and the other areas of potential disagreement, e.g., their claimed exemptions and alternatives to selling their house and nonexempt personal property. By December 2020, the parties had reached a settlement that includes the following terms:

- Debtors would withdraw the motion to dismiss;
- Debtors would pay the estate $395,000 in full satisfaction of the estate's interest in Debtors' non-exempt real and personal property;
- Specified exemptions would be allowed, subject to the payment of the $395,000;

---

[2] A stipulated judgment avoiding the mortgages and preserving the interest for the benefit of the estate was entered April 7, 2021.

- The trustee would sell the house and nonexempt personal property to Debtors, free and clear of liens, encumbrances, and interests pursuant to § 363(f);[3,4] and
- The Court would enter an order that Debtors are good faith purchasers under § 363(m).

The credit union and the bank objected to the settlement. The bank withdrew its objection after the trustee avoided the credit union's mortgages.

The following chart sets out the values the trustee and the credit union have agreed to for certain estate assets:

| **Debtors' House** | | **Nonexempt Personal Property** | |
|---|---|---|---|
| Value | $ 600,000.00 | 2 Saddles & Tack | $ 400.00 |
| Commission (6%) | $ (36,000.00) | 2 Horses | $ - |
| Closing Costs (2%) | $ (12,000.00) | Firearms | $ 1,000.00 |
| Exemption | $ (120,000.00) | Tools | $ 200.00 |
| **Net** | **$ 432,000.00** | ATV | $ 3,500.00 |
| | | **Subtotal** | **$ 5,100.00** |
| | | Auctioneer Commission | $ (510.00) |
| | | **Net** | **$ 4,590.00** |
| | | | |
| House | $ 432,000.00 | **Cash** | |
| Personal Property | $ 4,590.00 | 0091 Account | $ 14,609.82 |
| Cash | $ 15,730.62 | 8000 Account | $ 1,120.78 |
| **Subtotal** | **$ 452,320.62** | 470 Account | $ 0.02 |
| Settlement Payment | $ (395,000.00) | **Subtotal** | **$ 15,730.62** |
| **Settlement Discount** | **$ 57,320.62** | | |

The question before the Court is whether the $57,320.62 difference between the stipulated value of the estate assets and the settlement payment is within the range of reasonableness. In addition, because the trustee seeks to sell the Debtors' house under § 363, the settlement must meet the requirements of that section.

[3] Statutory references are to 11 U.S.C. unless otherwise indicated.
[4] The house may be encumbered by a lien securing payment of a $28,000 loan to pay for the installation of solar panels on the roof. Under the settlement, the lien would attach to the sale proceeds to the same extent, validity, and priority as it now attaches to the house.

B. Rule 9019(a) and the *Kopexa* Factors.

Fed. R. Bankr. P. 9019(a) is straightforward: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." *In re Starkweather*, 2021 WL 1521512, at *2 (Bankr. D.N.M.) (discussing the rule); *In re Brutsche*, 500 B.R. 62, 70 (Bankr. D.N.M. 2013) (same).

"Compromises are favored in bankruptcy." 10 Collier on Bankruptcy ¶ 9019.01 (16th ed. 2021). Compromises and settlements allow the trustee "to avoid the expenses and burdens associated with litigating." *In re Southern Medical Arts Companies, Inc.*, 343 B.R. 250, 255 (10th Cir. BAP 2006) (quoting *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380 (9th Cir. 1986)).

When considering whether to approve a settlement, a court must generally determine that the terms are fair, equitable, in the best interest of the estate, *see In re Kearney*, 2019 WL 994567, at *9 (Bankr. D.N.M.), and do not "fall[] below the lowest point in the range of reasonableness." *Id.* (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)). In the Tenth Circuit, this analysis is done with reference to the four-factor test in *In re Kopexa Realty Venture Co.*, 213 B.R. 1020 (10th Cir. BAP 1997). A court must consider:

(1) the chance of success of the litigation on the merits;
(2) possible problems in collecting the judgment;
(3) the expense and complexity of the litigation; and
(4) the interest of the creditors in deference to their reasonable views.

213 B.R. at 1022; *see also Kearney*, 2019 WL 994567, at *9. The Court weighs the *Kopexa* factors as follows:

1. The chance of success of the litigation on the merits. Weighing this factor depends on what the "litigation" consists of. If the litigation is merely of Debtors' motion to dismiss, then the factor does not favor settlement because Debtors have little chance of prevailing. This Court,

like most other bankruptcy courts, is loathe to dismiss chapter 7 cases with substantial unencumbered assets available for general unsecured creditors. On the other hand, if litigation encompasses all potential disputes between the trustee and Debtors over exemptions, auction sales, vacating/turning over the house, and listing and marketing the house, then the factor favors settlement. Debtors likely could lodge a number of colorable objections to the trustee's efforts to sell their property and may not cooperate. The result would be difficulty, delay, and expense. It is not possible to know when the trustee would complete liquidation of the estate, or for how much, or at what cost.

2. Possible problems in collecting the judgment. If the "judgment" means that the motion to dismiss was denied and the trustee was directed to liquidate the estate without Debtors' agreement or cooperation, then this factor weighs in favor of the settlement. Forcing the trustee to administer the estate without Debtors' cooperation would increase the delay and expense considerably. How do you stage and show the house without the Debtors' cooperation? What if Debtors could not find a place for the horses or left them on the property? What if Debtors left the house in a wreck? What if the house needed carpet, paint, and significant repairs before it could be shown? The potential problems that unhappy and uncooperative debtors could create are myriad.

3. The expense and complexity of the litigation. This factor weighs in favor of the settlement. While the motion to dismiss may not be complex, litigation could be expensive. There are four parties involved to some extent in the motion to dismiss: Debtors, the trustee, the bank, and the credit union. The credit union is represented by able counsel who would argue forcefully in favor of dismissal. The Court previously entered a protective order limiting the credit union's discovery in conjunction with this settlement motion, *Starkweather*, 2021 WL 1521512. The

stipulations agreed to by the credit union and the trustee only apply to the settlement motion. If the settlement is not approved and discovery is reopened in conjunction with the motion to dismiss, administrative expenses could consume any money the estate might make by liquidating Debtors' nonexempt assets. Furthermore, the expense of fighting with Debtors over liquidation could be substantial. For example, if Debtors objected to a proposed sales price for the house, litigating that issue would require expert testimony.

4. The interest of the creditors. This factor weighs in favor of settlement. Apart from the credit union, no creditor opposes the settlement. The credit union's financial interests diverge from those of the typical unsecured creditor because of the mortgage recording problem. For that reason, the Court discounts the credit union's opposition. With respect to "disinterested" unsecured creditors, the Court finds that the settlement is reasonable and in their best interests. While the settlement could be viewed as allowing the trustee to leave $57,320.62 on the table, without a deal the trustee could easily end up worse off.

Overall, the *Kopexa* factors weigh in favor of the settlement. The Court finds that the proposed settlement is in the best interest of the estate and falls within the range of reasonableness.

C. Section 363(b) and the Business Judgment Standard.

Section 363(b) of the Bankruptcy Code authorizes certain uses, sales, and leases of estate property outside of the ordinary course of business.

> In determining whether to approve a § 363(b) sale, the "business judgment" test applies. *In re Allen*, 607 Fed. App'x 840, 843 (10th Cir. 2015). The test requires the trustee to articulate "sound business reasons for the terms of the proposed sale." *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004). The trustee's business decision is entitled to deference from the court, as long as the burden of giving sound business reasons is met. *Id.*, *citing In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002).
>
> Factors courts consider in determining whether a proposed sale falls within the "business judgment rule" include:

1. Does the proposed sale involve any improper or bad motive?
2. Is the price fair and reasonable?
3. Did the negotiations occur at arm's length?
4. Was the property adequately exposed to the market?
5. Was the notice of the sale motion adequate and accurate?

*In re Railyard Company, LLC*, 572 B.R. 766, 770 (Bankr. D.N.M. 2017). The Court weighs these factors as follows:

1. Improper motive. There is no improper motive. The negotiations leading to the proposed settlement were prompted by the facts of the case, primarily the mortgage recording mistake. Once that error was discovered, the trustee and Debtors negotiated an agreement that each perceives to be in their best interest. That is an entirely appropriate way to proceed. Debtors filed their motion to dismiss in good faith but have now settled that motion in good faith, having achieved the goal of keeping their house. The trustee, for his part, believes that the deal he struck is better than trying to liquidate the estate without Debtors' cooperation.

2. Is the price fair and reasonable? The Court finds that it is. The trustee has experience trying to sell estate assets without debtors' consent and cooperation. While it is possible the trustee could realize more money selling estate assets without a settlement, it seems just as likely that such a liquidation could take much longer and net less to the estate. Given that, the agreed-upon payment amount is reasonable.

3. Arms' length negotiations? Yes. The trustee and Debtors have an adversarial relationship. Their dealings were cordial, from what the Court can tell, but they were at arms' length. Debtors' worked to get the best deal for themselves, while the trustee did the same for the estate.

4. Property adequately exposed to the market? This factor may be neutral or weigh against approval of the sale motion. The trustee obtained a comparative market analysis on

Debtors' house but did not actually expose it to the market. All things considered, this may have been reasonable. The trustee's unimpeached testimony was that marketing and selling the property could take 12-18 months. It would be substantially more difficult without Debtors' cooperation. The trustee chose to liquidate the estate sooner for a negotiated price rather than list or auction the property and try to get a higher price without cooperation from Debtors.

5. Notice of sale motion adequate? Yes. The trustee's motion was noticed to the creditor matrix, including all parties claiming a lien on the house.

Overall, the trustee's proposed sale to the Debtors is well within his sound business judgment.

D. Sale Free and Clear of Liens Under § 363(f).

Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of [§ 363] free and clear of any interest in such property of an entity other than the estate, only if–
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Following avoidance of the credit union's mortgage, the only potential lien is for the solar panel loan. The $395,000 sale price is far greater than the solar panel debt. The trustee may sell the house free and clear of liens pursuant to, at least, § 363(f)(3) and (5).

E. Debtors' Are Good-Faith Purchasers.

The trustee asks that the Court enter an order declaring that Debtors or their assignees are good faith purchasers of the house, so the validity of the sale will not be affected if the Court's decision is overturned on appeal, per § 363(m). The Court agrees that it is appropriate to do so.

The Court has already found that the negotiations between the trustee and the Debtors occurred at arm's length. No evidence has been introduced indicating a lack of good faith on the part of any party. *See In re Castre, Inc.*, 312 B.R. 426, 431 (Bankr. D. Colo. 2004) (making a similar finding). Debtors are good faith purchasers under § 363(m).

Conclusion

The settlement and § 363 sale proposed by the trustee are a good deal for the estate and its general unsecured creditors. Although the credit union opposes the settlement, it primary motive for doing so is to obtain case dismissal rather than maximizing recovery on its unsecured claim. The deal the trustee struck is reasonable given the problems that could arise if he were forced to sell Debtors' house and other nonexempt property over their objection. The Court will grant the trustee's motion by separate order.

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 17, 2021
Copies to: Counsel of record